[Civ. No. 12713.   First Dist., Div. One.   Nov. 6, 1944.]

Estate of ROBERT J. WALSH, Deceased.   IRENE L. GREENE, Appellant, v. ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO (a National Banking Corporation), as Administrator, etc., Respondent.

John Barton O'Brien and Herbert Chamberlin for Appellant.

Richard S. Goldman and Clarissa Shortall for Respondent.

PETERS, P. J.—This is an appeal from a portion of an order instructing the administrator of the estate of Robert J. Walsh to treat certain property in the estate of the decedent as community property of the decedent and of his predeceased wife. It is the contention of the appellant that certain of that property, consisting of several articles of jewelry, as a matter of law, was the separate property of the predeceased wife.

Robert J. Walsh and Julia A. Walsh were married in 1900 and lived together until June of 1942, when Julia A. Walsh died. They had no children. The wife died testate, leaving an estate consisting of certain separate property and her share of the community property. Her surviving husband was the sole beneficiary of her estate, and all of her property was distributed to him. Her sole heir at law was her mother, appellant Irene L. Greene. Robert J. Walsh died, intestate, in June, 1943. His heirs at law are two sisters, a brother,

two nieces and two nephews. His estate consists of his separate property, the separate property of his wife, and the community property. The proper designation of the various items is important in the distribution because under section 228 of the Probate Code appellant and the heirs at law of the husband will share the community property, while under the provisions of section 229 of the Probate Code appellant is entitled, as statutory heir of the husband, to succeed to that portion of the estate that was the separate property of her daughter.

The total estate of Robert J. Walsh was appraised at $143,940.54. The interested parties were unable to agree as to the character of many of the items involved, and, as a result, the administrator petitioned the court, under section 588 of the Probate Code, for instructions respecting this property. Some evidence was introduced as to the character of some of the items, and certain stipulations were entered into as to other items. The court then instructed the administrator to treat certain personal property as the separate property of decedent, certain real estate as the separate property of Julia A. Walsh, and that ''all other property'' listed in the inventory should be treated as the community property of the deceased and his wife. The heirs agree that the order was correct as to all the property except certain jewelry inventoried at about $2,500. Appellant Irene L. Greene contends that such jewelry was the separate property of her daughter, and, as such, should be distributed to her. She appeals from the order only insofar as it relates to this jewelry.

The inventory shows that the jewelry in question consists of several rings, earrings, a brooch, a lady's wrist watch and several miscellaneous items. The only witness called by either side who testified as to the character of the jewelry was Ray M. Greene, brother-in-law of Robert J. Walsh, who was called by appellant. He testified, and both sides admit, that the jewelry was purchased by Robert J. Walsh from the community funds of the parties. He also testified that the various items ''were given to her [Mrs. Walsh] as anniversary gifts, Christmas times.'' When asked: ''Whether that was considered separate property you don't know?'', he answered, ''He made them as gifts to her.'' The evidence continues: ''Q. You know he gave them to her, and she had the jewels? A. I would say he gave them to her for her own personal adornment.'' There was also testimony that two of the arti-

cles involved were an engagement ring and a wedding ring, given to Mrs. Walsh by Mr. Walsh long after their marriage to replace the originals. It is also an admitted fact that Mr. Walsh was the administrator of his wife's estate, and although he listed therein certain real property as her separate property that he had given to her during the marriage, he did not list the jewelry as separate property of his wife.

In order to prevail on this appeal appellant must show not only that the evidence would support a finding that the property is separate, but must also show that it compels, as a matter of law, such finding—in other words, that the finding that it is community property is totally unsupported. The argument of appellant runs about like this: A husband may, of course, make a gift of community property to his wife, even though the gift was purchased with community funds, and, if he does so, the property that is the subject of the gift becomes the separate property of the wife. (*Ballinger* v. *Ballinger*, 9 Cal.2d 330, 333 [70 P.2d 629] ; *Olson* v. *Olson*, 4 Cal.2d 434, 438 [49 P.2d 827] ; *Cullen* v. *Bisbee*, 168 Cal. 695, 698 [144 P. 968] ; *Kane* v. *Desmond*, 63 Cal. 464, 465 ; *Hutchinson* v. *California Trust Co.*, 43 Cal.App.2d 571, 575 [111 P.2d 401].) Based on this premise, which is sound law and admitted to be true by respondent, appellant argues that the evidence that the articles were delivered to the wife as "gifts" at Christmas times, or on anniversary dates, conclusively establishes that such property was delivered as gifts in the legal sense, and therefore became the separate property of the wife. ▮ There can be little doubt that evidence of delivery of jewelry by the husband to the wife at such times, regardless of the source of the funds, raises an inference that would support a finding of an intent to make a gift. However, in the absence of any other evidence of intent, we do not think that the trial judge is compelled, as a matter of law, to indulge in such inference. ▮ Where the husband transfers to his wife community property by an *instrument in writing* the statutory presumption contained in section 164 of the Civil Code arises. That section provides that: "All other property acquired after marriage by either husband or wife . . . is community property; but whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired by a married woman *by an instrument in writing*, the presumption is that the same is her separate property. . . ." (Italics added.) (See cases collected 3 Cal.Jur. Ten-year

Supp., p. 650, § 135.) Under this section, where there is a transfer by the husband to the wife in writing, a presumption of a gift arises. But where, as here, there is no evidence of a writing, the implication of the section is that the general rule that all property in possession after marriage is presumed to be community applies. ■ Where there is no writing, there certainly is no presumption in favor of a gift, but quite to the contrary the burden of proof is on the donee or those claiming under her to prove the gift. In *Sprague* v. *Walton,* 145 Cal. 228 [78 P. 645], the evidence of a gift was much stronger than that in the present case. The trial court found that the property was community property. The court refused to reverse the finding, stating (p. 234) : "But the burden of proving a gift rested upon the defendant, and it was essential for her to prove, among other things, that Moses Sprague intended a gift of the deposits." Whether she had sustained that burden, even though the evidence produced by her was referred to as "uncontradicted and unquestioned," was held to be for the trial court. In *Denigan* v. *Hibernia etc. Society,* 127 Cal. 137 [59 P. 389], it was held (p. 140) that where the character of the origin of the property involved is conceded, and in the instant case it is conceded that the jewelry was purchased with community funds, that "it was incumbent upon anyone setting up a claim thereto against her personal representative to show that he had in some way acquired her title." In that case the problem involved was whether the wife had made a gift of a bank deposit of her separate property to her husband. The husband had possession of the passbook. At page 141 the court said: "Possession of a bank-book may be a circumstance in determining the ownership of the money represented by it, but is not of itself determinative of that fact, in the absence of any evidence as to how the possession was obtained. Possession is not the equivalent of delivery. . . . There is no presumption in favor of a gift." The warning expressed in *Lo Presti* v. *Manning,* 125 Cal.App. 442, 445 [13 P.2d 1002], must be kept in mind. It was there stated: "It is the policy of the law to receive with caution the claim to a gift asserted for the first time after the death of the alleged donor. It is therefore incumbent upon the donee to establish a completed gift by clear and convincing evidence, whether it be a gift *inter vivos* or *causa mortis.* There can be no gift without an intention to

give, and a delivery, either actual or constructive, of the thing given.''

In the instant case the jewelry was admittedly purchased by Robert J. Walsh with community funds. That, prima facie, established that the jewelry was community property. The burden rested on the appellant, who claims through Julia A. Walsh, to prove that there was a gift. To do that she must prove not only a delivery but that there was an intention to make a gift. In an attempt to meet that burden appellant produced a witness who proved delivery of the jewelry by the husband to his wife at Christmas times and on anniversaries. That proved a delivery, and it may well be that the fact of delivery at such times, would raise the inference of an intention to make a gift. But, it is elementary law, that the question as to whether an inference shall be drawn from the evidence is generally a question of fact for the determination of the trier of the facts and its determination is conclusive on an appellate court. In the instant case, the trial court refused to indulge in the inference. Since the inference is not one that must follow from proof of delivery, the determination of the trial court is binding on this court.

The whole issue is whether the delivery to Julia A. Walsh was accompanied by the requisite intent to make a gift. Not only is there no positive evidence that the husband had such intent, but the record is entirely silent that Julia A. Walsh ever claimed by act or word that the jewelry was her separate property. In fact, the evidence produced by appellant is that the jewelry was delivered to Mrs. Walsh for ''her own personal adornment.'' Such evidence does not necessarily show a gift. Moreover, there is some evidence, weak though it may be, that the husband did not believe the property was his wife's separate property. He was administrator of his predeceased wife's estate. He listed certain separate property of his wife as her separate property—property which, by the way, he had given her—but he did not list the jewelry as her separate property. While the husband's sworn statement in the inventory of his wife's estate cannot conclusively establish the character of the property, it is some evidence that he did not believe it to be separate property, and, therefore, some evidence that he did not intend to make a gift to his wife.

Appellant strongly relies on *Olson* v. *Olson,* 4 Cal.2d 434 [49 P.2d 827]. In that case the trial court had found that a considerable quantity of personal property was the separate property of those claiming through the deceased husband. At page 438 the court stated: ''With reference to the washing machine, the evidence is unequivocal and uncontradicted that it was a Christmas present and therefore an outright gift to Milda Olson from Werner Olson. It is obvious, therefore, that said machine is the separate property of Milda Olson and she is entitled to its possession.'' What the evidence was relating to this question, is not set forth in the opinion. The implication is, that the evidence showed that it was delivered with intent to make a gift. This being so, there is nothing inconsistent in that case with what is stated herein.

The order appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1945. Edmonds, J., Traynor, J., and Spence, J., voted for a hearing.